Frank D. JONES, Plaintiff–Appellant,

v.

NEW YORK STATE DIVISION OF MILITARY AND NAVAL AFFAIRS and New York State Army National Guard, Defendants–Appellees.

Docket 97–7723.

United States Court of Appeals, Second Circuit.

Argued Feb. 6, 1998.

Decided Jan. 7, 1999.

Bradley A. Sherman, O'Connell and Aronowitz, Albany, New York, for Plaintiff-Appellant.

Michael S. Buskus, Assistant Attorney General, (Peter H. Schiff, Deputy Solicitor General, Nancy A. Spiegel, Assistant Attorney General, Dennis C. Vacco, Attorney General of the State of New York, on the brief), Albany, New York, for Defendants-Appellees.

Before: KEARSE and WALKER, Circuit Judges, and WEINSTEIN, District Judge*.

JOHN M. WALKER, Jr., Circuit Judge:

This is an appeal from the judgment of the United States District Court for the Northern District of New York (Lawrence E. Kahn, *District Judge*) (1) dismissing, on grounds of Eleventh Amendment immunity, plaintiff-appellant Frank D. Jones's 42 U.S.C. § 1983 action alleging that· defendants-appellees, the New York State Division of Military and Naval Affairs ("DMNA") and the New York State Army National Guard ("NYANG" or "the Guard"), removed Jones from the NYANG's aviation service without due process of law in violation of the Fifth and Fourteenth Amendments. In order to defeat dismissal, Jones sought leave from the district court to amend his complaint pursu-

---

* The Honorable Jack B. Weinstein, of the United States District Court for the Eastern District of New York, sitting by designation.

ant to Fed.R.Civ.P. 15(a) to add three NYANG officers as defendants in their individual and official capacities. The district court denied leave to amend on the basis that amendment would be futile because (1) the claims against two of the proposed defendants would be time-barred and (2) the claims against all three proposed defendants would amount to a non-justiciable challenge to a discretionary military decision. *See Jones v. New York State Div. of Military Affairs*, No. 93–CV–0862, 1997 WL 266765, at *3, *9–10 (N.D.N.Y. May 7, 1997).

On appeal, Jones claims that the district court abused its discretion in denying leave to amend. He argues that the doctrine of non-justiciability does not apply to his claims that the proposed defendants failed to follow military regulations. *See Smith v. Resor*, 406 F.2d 141, 145–46 (2d Cir.1969). We hold that, whether or not the proposed defendants failed to follow military regulations as required by *Smith*, this particular exception to the non-justiciability rule is unavailable to Jones because he failed to exhaust the NYANG's procedures for appealing discretionary decisions. Because his claims against the proposed individual defendants could not succeed, it would have been futile for the district court to allow Jones to amend his complaint to add them. Since we agree with the district court that Jones's remaining claims, all of which were against state defendants, must be dismissed on Eleventh Amendment grounds, we affirm the judgment.

## BACKGROUND

The following facts are undisputed. Jones, a highly decorated veteran of the United States Army, served 13 months in Vietnam as a helicopter combat pilot and aviation section commander. In September 1973, he left the active Army due to a reduction-in-force. That same year, he joined the NYANG.

By June 29, 1990, Jones had risen to the rank of major in the NYANG, in which he served with the 42nd Infantry Division. The NYANG is part of the organized New York State militia. Its commander-in-chief is the Governor of New York. The NYANG's commanding general is appointed by the Governor and serves at his pleasure. *See* N.Y. Exec. Law § 190, N.Y. Mil. Law §§ 2, 40. The NYANG also has a federal role. The federal government may order the NYANG into active federal duty whenever necessary, at which times the NYANG is a component of the United States Army under the ultimate command of the President of the United States. *See Perpich v. Department of Defense*, 496 U.S. 334, 347–48, 110 S.Ct. 2418, 110 L.Ed.2d 312 (1990); *Gilligan v. Morgan*, 413 U.S. 1, 6–7, 93 S.Ct. 2440, 37 L.Ed.2d 407 (1973); 10 U.S.C. § 12401; 32 U.S.C. § 102. Thus, the NYANG must be trained, organized and operated according to federal standards as directed by the National Guard Bureau, a federal agency. *See* 10 U.S.C. § 10503. An enlistee of the NYANG simultaneously joins the United States Army National Guard.

Although Jones was in a non-aviation unit and was not assigned an aircraft, he continued to fly assault helicopters as part of the Career Development Aviator Program ("CDAP"). The CDAP permits NYANG aviators assigned to non-aviation units to maintain flight proficiency by participating in operational flying. *See* National Guard Regulation ("NGR") 95–210, ¶ 1–9(a) (Oct. 1, 1988), NGR 95–1, ¶ 1–14.2 (Apr. 30, 1980). On June 4, 1990, Colonel Joseph Ferreira informed Jones that he was being removed from the CDAP. Ferreira was New York's State Army Aviation Officer, with primary responsibility for overseeing the Guard's aviation program.

On June 5, 1990, Jones, dissatisfied with Ferreira's decision, submitted a written request to his commanding officer, NYANG Major General Martin Lind, seeking a Flight Evaluation Board ("FEB") hearing pursuant to Army Regulation ("AR") 600–105. The FEB is a review board which under certain circumstances convenes to examine an aviator's continued qualification for service. Although FEB recommendations are advisory, an aviator has a right to FEB review before he or she is deemed professionally unqualified to remain airborne.

Jones's FEB request was forwarded to Major General Lawrence P. Flynn, Adjutant General and commanding officer of the NYANG. On June 29, 1990, Flynn wrote to Jones declining to convene the FEB. He explained that "[i]ndividuals are allowed to participate in the CDAP at the discretion of [the Adjutant General], when their participation will provide a benefit to the state." Finding no such benefit from Jones's continued participation, Flynn concluded that "an FEB is not warranted." He also stated that "a request for termination of [Jones's] aviation service has been requested from [the National Guard Bureau]."

In the face of this resistance, Jones contacted State Assembly member Neil W. Kelleher, who wrote a letter to then-New York Governor Mario Cuomo. The letter challenged the NYANG's failure to investigate certain unspecified charges of corruption in the NYANG allegedly raised by Jones. This letter, however, failed to include a clear statement of the material facts relating to Jones's removal from the CDAP and it did not request an FEB hearing or the reversal of the decision to remove Jones from the CDAP program. The record does not reveal whether the Governor took any action as a result of this letter, but the FEB was not convened to consider Jones's removal. Jones alleges that as a result of his removal from the CDAP, he was not retained as a NYANG member. Jones remained in the Guard until July 1, 1991.

On June 29, 1993, Jones filed this § 1983 action against the DMNA and the NYANG, alleging that the defendants' actions violated his due process rights under the Fifth and Fourteenth Amendments to the United States Constitution. The complaint sought reinstatement in the Guard with back pay, or, in the alternative, "the convening of an impartial [FEB] to consider the merits of [Jones's] dismissal from Aviation Service." The complaint also sought $100,000 in damages.

In November 1996, the defendants moved to dismiss the complaint for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b) and 12(h)(3). They argued that (1) Jones's claims involve non-justiciable military matters; (2) State entities are not "persons" within the meaning of 42 U.S.C. § 1983[1]; (3) the Eleventh Amendment bars consideration of Jones's claims against the State; and (4) Jones failed to exhaust the administrative remedies provided in N.Y. Mil. Law § 131.4 and DMNA Regulation 27–7 promulgated pursuant thereto.

Jones cross-moved to amend his complaint, pursuant to Fed.R.Civ.P. 15, in order to add Flynn, Lind and Ferreira as individual defendants. Jones's purpose was two-fold: to avoid dismissal of the action on the ground of Eleventh Amendment immunity and to bring his complaint against "persons" within the purview of § 1983.

On May 7, 1997, the district court denied Jones's cross-motion and granted the defendants' motion to dismiss. *See Jones*, 1997 WL 266765, at *11. The court concluded that the existing defendants, as state entities, are entitled to sovereign immunity from suit pursuant to the Eleventh Amendment, *see id.* at *2, and are not "persons" within the meaning of § 1983, *see id.* at *2 n. 1. Thus, the district court explained, unless the proposed individual defendants could be added to the suit, dismissal for lack of subject matter jurisdiction would be appropriate. *See id.* at *3. The district court went on to deny Jones's motion to amend the complaint to add the individual defendants on the basis of futility. The district court held that, even if the claims against the proposed new defendants were found to relate back to the date on which the complaint was originally filed, *see* Fed.R.Civ.P. 15(c), the action would be time-barred as against Ferreira and Lind. Jones alleged that the actions of Ferreira and Lind that violated his due process rights occurred on June 4, 1990 and June 5, 1990, respective-

---

1. 42 U.S.C. § 1983 provides in relevant part:
 Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

ly, more than three years before the complaint was filed. Because the applicable statute of limitations is three years, *see Leon v. Murphy*, 988 F.2d 303 (2d Cir.1993), the district court concluded that adding Lind and Ferreira as defendants would be futile. *See Jones*, 1997 WL 266765, at *3.

The district court concluded that the claim against Flynn was not time-barred because Flynn denied Jones's request to convene the FEB on June 29, 1990, within the three-year limitations period. Nonetheless, the district court determined that, in any event, amendment would be futile as to all of the defendants because the proposed complaint would be subject to immediate dismissal as pertaining to a non-justiciable discretionary military decision. *See id.* at *11. This appeal followed.

## DISCUSSION

### I. *Standard of Review*

██ We review the district court's dismissal of the complaint on the pleadings *de novo*, *see Jaghory v. New York State Dep't of Educ.*, 131 F.3d 326, 329 (2d Cir.1997); *Close v. State of New York*, 125 F.3d 31, 35 (2d Cir.1997), and accept as true all material factual allegations in the complaint, *see Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir.1998). We review the denial of a motion for leave to amend for an abuse of discretion. *See Sheldon v. PHH Corp.*, 135 F.3d 848, 851 (2d Cir.1998). If that denial was based on an interpretation of law, we review that legal conclusion *de novo*. *Id.* at 852.

### II. *Eleventh Amendment Immunity*

██ Absent the addition of the proposed defendants to the complaint, the district court correctly concluded that dismissal was proper. The Eleventh Amendment provides:

The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI. The Supreme Court has interpreted the amendment to bar suits against the States by their own citizens as well as those of foreign jurisdictions. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98, 100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984); *Edelman v. Jordan*, 415 U.S. 651, 662–63, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). Both the DMNA and the NYANG are state agencies entitled to Eleventh Amendment immunity. *See Pennhurst*, 465 U.S. at 100, 104 S.Ct. 900; *Santiago v. New York State Dep't of Correctional Servs.*, 945 F.2d 25, 28 & n. 1 (2d Cir.1991). Jones has not argued that New York has waived its sovereign immunity in this matter, *see Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 238, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985); *Close*, 125 F.3d at 36, nor that Congress has abrogated New York's sovereign immunity, *see Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 59–60, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996); *Close*, 125 F.3d at 36.

██ Further, as the district court noted, neither the DMNA nor the NYANG are "persons" within the meaning of 42 U.S.C. § 1983. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989); *Komlosi v. New York State Office of Mental Retardation and Developmental Disabilities*, 64 F.3d 810, 815 (2d Cir.1995). Thus, even apart from Eleventh Amendment considerations, Jones has failed to state a claim against either state agency. Resolution of this case turns, therefore, on whether the district court abused its discretion in denying leave to add the proposed individual defendants to the suit.

### III. *Leave to Amend Under Rule 15*

██ The district court denied leave to add Flynn, Lind and Ferreira as defendants on the ground that such amendment would be futile. On appeal, Jones challenges this determination only as to Flynn. He seeks to add claims against Flynn individually and in his official capacity as New York State Adjutant General. The Eleventh Amendment would not bar a suit in law or equity against Flynn in his personal capacity, *see Hafer v. Melo*, 502 U.S. 21, 27–28, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991), nor would it bar a suit seeking prospective equitable relief against Flynn in his capacity as a state official, *see*

*Pennhurst,* 465 U.S. at 102–03, 104 S.Ct. 900; *Ex Parte Young,* 209 U.S. 123, 160, 28 S.Ct. 441, 52 L.Ed. 714 (1908).

 Once a responsive pleading has been served, "a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). *See Hemphill v. Schott,* 141 F.3d 412, 420 (2d Cir.1998). However, a district court may properly deny leave when amendment would be futile. *See Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); *Electronics Communications Corp. v. Toshiba America Consumer Prods., Inc.,* 129 F.3d 240, 246 (2d Cir.1997). The defendants argue that it would be futile to add Flynn as a defendant because any claims brought against him based on his denial of Jones's request for an FEB hearing would be non-justiciable. Jones claims damages and injunctive relief arising out of the denial. We examine each in turn to determine whether seeking such relief from Flynn would be futile.

### A. *Damages*

 Jones's proposed amended complaint seeks damages of $100,000. However, his damages claim is not viable. It is well established that a member of the United States military may not seek damages for injuries suffered incident to military service. *See United States v. Stanley,* 483 U.S. 669, 684, 107 S.Ct. 3054, 97 L.Ed.2d 550 (1987). And we hold that similar suits brought by National Guard personnel also should be barred.

In *Bivens v. Six Unknown Fed. Narcotics Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), the Supreme Court established a cause of action for damages against federal officials for violation of constitutional rights despite the absence of Congressional legislation creating such a cause of action. However, the Court has held that a *Bivens* action may not be brought by United States military personnel for injuries that "arise out of or are in the course of activity incident to service." *Stanley,* 483 U.S. at 684, 107 S.Ct. 3054 (quotation marks omitted); *see also Chappell v. Wallace,* 462 U.S.

296, 304, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983); *cf. Feres v. United States,* 340 U.S. 135, 146, 71 S.Ct. 153, 95 L.Ed. 152 (1950) (Federal Tort Claims Act does not authorize suit to remedy harms suffered incident to military service).

The refusal to extend *Bivens* to challenges in the military context is a result of the Court's reluctance to find a cause of action directly under the Constitution where "special factors counselling hesitation" are present. *Stanley,* 483 U.S. at 678, 107 S.Ct. 3054. In *Chappell,* 462 U.S. at 300, 103 S.Ct. 2362, the Court determined that such "special factors" were present in the context of a constitutional damages action brought by servicemembers against their superior officers. These were "[t]he need for special regulations in relation to military discipline, and the consequent need and justification for a special and exclusive system of military justice." *Id.; see also Stanley,* 483 U.S. at 684, 107 S.Ct. 3054.

The special nature of military discipline and the importance of judicial deference in military affairs have long been recognized.

> [J]udges are not given the task of running the [military].... The military constitutes a specialized community governed by a separate discipline from that of the civilian. Orderly government requires that the judiciary be as scrupulous not to interfere with legitimate Army matters as the Army must be scrupulous not to intervene in judicial matters.

*Orloff v. Willoughby,* 345 U.S. 83, 93–94, 73 S.Ct. 534, 97 L.Ed. 842 (1953). The military's special task of fighting the nation's wars requires a particular level of discipline and of sacrifice of individual rights which would never be tolerated in civilian society. *See Able v. United States,* 155 F.3d 628, 632–34 (2d Cir.1998).

Another factor counseling hesitation is the fact that the Constitution places primary authority for control of the military in the executive and legislative branches. *See* U.S. Const. art. I, § 8 ("The Congress shall have the Power ... [t]o declare War ...; [t]o raise and support Armies ...; [t]o provide and maintain a Navy; [t]o make Rules for

the Government and Regulation of the land and naval Forces; [and] to provide for calling forth the Militia"); U.S. Const. art. II, § 2 ("The President shall be Commander in Chief of the Army and Navy of the United States, and of the Militia of the several States"). The Supreme Court has said that when a "case arises in the context of Congress' authority over national defense and military affairs ... perhaps in no other area [is] ... Congress [accorded] greater deference." *Rostker v. Goldberg,* 453 U.S. 57, 64–65, 101 S.Ct. 2646, 69 L.Ed.2d 478 (1981); *see Chappell,* 462 U.S. at 302, 103 S.Ct. 2362 ("Congress has exercised its plenary constitutional authority over the military, has enacted statutes regulating military life, and has established a comprehensive internal system of justice to regulate military life").

Thus, in light of the need for deference to the political branches of government in military matters, the *Chappell* Court concluded that, in the absence of an explicit, congressionally-authorized damages remedy for claims by military personnel to vindicate constitutional rights, a judicially-created *Bivens* remedy "would be plainly inconsistent with Congress' authority in this field." 462 U.S. at 304, 103 S.Ct. 2362. *See also Department of Navy v. Egan,* 484 U.S. 518, 530, 108 S.Ct. 818, 98 L.Ed.2d 918 (1988) ("unless Congress specifically has provided otherwise, courts traditionally have been reluctant to intrude upon the authority of the Executive in military ... affairs").

Jones argues that because Flynn is a state rather than federal official, an action pursuant to 42 U.S.C. § 1983 which applies to state actors, will lie even though an action against federal military actors under *Bivens* would not. This is an issue of first impression for us. We have not decided whether the reasoning of *Chappell* and *Stanley* extends to a § 1983 damages action that seeks redress for injuries that "arise ... incident to [state military] service." *Stanley,* 483 U.S. at 684, 107 S.Ct. 3054 (quoting *Feres,*

340 U.S. at 146, 71 S.Ct. 153). If it does, then the proposed amendment would be futile because any injuries attributable to the decision to remove Jones from the CDAP and the refusal to convene an FEB hearing arose incident to Jones's military service in the NYANG. *See Bowen v. Oistead,* 125 F.3d 800, 804 (9th Cir.1997) (damages action barred "whenever a legal action would require a civilian court to examine decisions regarding management, discipline, supervision, and control of members of the armed forces") (internal quotation marks and citation omitted).

■■■ In accordance with every other circuit to have considered the issue,[2] we believe that the reasoning of *Chappell* and *Stanley,* developed in the *Bivens* context, applies with equal force to a § 1983 claim against state military officials. We are guided by the Supreme Court's command in *Butz v. Economou,* 438 U.S. 478, 500, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978), that claims brought pursuant to *Bivens* and § 1983 are identical for purposes of official immunity:

> in the absence of congressional direction to the contrary, there is no basis for according to federal officials a higher degree of immunity from liability when sued for a constitutional infringement as authorized by *Bivens* than is accorded state officials when sued for the identical violation under § 1983 ....
>
> ....
>
> [A contrary] analysis would place undue emphasis on the congressional origins of the cause of action in determining the level of immunity.

*Id.* at 500–01, 98 S.Ct. 2894. Accordingly, absent some reasoned distinction, justiciability of constitutional tort actions incident to federal and state military service should be co-extensive. This is particularly true in light of the central role the National Guard plays in the national defense and the close working relationship between the National

2. *See, e.g., Wright v. Park,* 5 F.3d 586, 591 (1st Cir.1993); *Jorden v. National Guard Bureau,* 799 F.2d 99, 106, 108 (3d Cir.1986); *Holdiness v. Stroud,* 808 F.2d 417, 423 (5th Cir.1987); *Knutson v. Wisconsin Air Nat'l Guard,* 995 F.2d 765, 770 (7th Cir.1993); *Wood v. United States,* 968

F.2d 738, 739 (8th Cir.1992); *Watson v. Arkansas Nat'l Guard,* 886 F.2d 1004, 1007 (8th Cir.1989); *Bowen,* 125 F.3d at 803 n. 2 & 804–05(9th); *Martelon v. Temple,* 747 F.2d 1348, 1350–51 (10th Cir.1984).

Guard and the United States Army. The policy concerns are the same in both contexts. Allowing § 1983 actions based on injuries arising incident to service in the Guard would disrupt military service and undermine military discipline to the same extent as allowing *Bivens* actions based on injuries arising incident to service in the United States Army. *See Crawford v. Texas Army Nat'l Guard*, 794 F.2d 1034, 1036 (5th Cir.1986) ("Section 1983 . . . claims, like those predicated on *Bivens*, invite judicial second-guessing of military actions and tend to overlap the remedial structure created within each service. . . ."). In sum, the district court did not abuse its discretion in declining to permit Jones to amend his complaint to seek damages from General Flynn.

### B. *Injunctive Relief*

Jones's proposed amended complaint also seeks an injunction reinstating him to the Guard with back pay or, in the alternative, requiring an FEB hearing to consider the merits of his dismissal from the CDAP.

 "[F]ederal courts will not normally review purely discretionary decisions by military officials which are within their valid jurisdiction." *Kurlan v. Callaway*, 510 F.2d 274, 280 (2d Cir.1974); *see also Smith*, 406 F.2d at 145; *Fox v. Brown*, 402 F.2d 837, 840 (2d Cir.1968); *cf. Orloff*, 345 U.S. at 92–93, 73 S.Ct. 534 (service members may not obtain habeas corpus review of assignments to duty). This policy is based on the common-sense notion that allowing service members to sue their superiors would unacceptably compromise military discipline and readiness for combat. The risk of improper judicial interference with military functioning is not abated "merely because the remedy sought is an injunction rather than damages." *Watson*, 886 F.2d at 1009. *See also Lovell v. Heng*, 890 F.2d 63, 64–65 (8th Cir.1989) (same).

The rule of non-justiciability of discretionary military decisions is not absolute. Among the exceptions we have recognized is where the military has failed to follow its own mandatory regulations in a manner substantially prejudicing a service member. "To the extent that a military regulation is man-datory, the courts will see that it is observed." *Ornato v. Hoffman*, 546 F.2d 10, 13 (2d Cir.1976); *see also Blassingame v. Secretary of the Navy*, 866 F.2d 556, 559–60 (2d Cir.1989); *Crawford v. Cushman*, 531 F.2d 1114, 1120 (2d Cir.1976). "This does not involve any undue interference with the proper and efficient operation of our military forces because we require only that the [military] carry out the procedures and regulations it created itself." *Smith*, 406 F.2d at 146.

In the present action, Jones seeks to amend his complaint to allege that Flynn failed to follow mandatory military regulations in failing to convene an FEB hearing. Army Regulation 600–105, Paragraph 4–1 provides:

Each person authorized to pilot an Army aircraft or perform crewmember duties must maintain the highest professional standards. When his or her performance is doubtful, justification for continued qualification for aviation service or authorization to pilot Army aircraft is subject to complete review.

Paragraph 4–2 provides:

*a.* [An FEB] convenes to—

(1) Examine the qualifications of an officer for aviation service.

(2) Evaluate the officer's potential for continued aviation service.

(3) Make recommendations to higher authorities.

. . . .

*c.* An FEB reviews the officer's past performance, background, and qualifications.

Paragraph 4–5 provides that "[a]n FEB *will* be convened when—a. One or more of the conditions in paragraph 3–10 exists." (emphasis added).

Paragraph 3–10 provides for "Nonmedical disqualification." It states: .

*a.* If an officer fails to remain professionally qualified or has marginal potential for continued aviation service, an FEB should be convened to consider the case. An FEB will be convened under the conditions in (1) through (7) below.

. . .

(1) *Lack of proficiency.* Evidence that shows the officer—

. . .

(d) Failed to maintain a current instrument qualification. . . .

(2) *Flagrant violation of flying regulations.* . . .

(3) *Undesirable habits or traits of character.* . . .

(4) *Insufficient motivation.* . . .

(5) *Failure to complete graduate flight training.* . . .

Taken together, these Army regulations create a mandatory right to an FEB hearing whenever an aviator's continued professional qualification to fly is questioned. Jones's pleadings can be read to allege that his dismissal from the CDAP was caused by his failure to complete instrumental qualification training, thus triggering his right to have the FEB review his record.[3] Flynn's failure to convene a FEB hearing would thus constitute a failure of the military to follow its own mandatory regulations.

■ The defendants make several arguments in response. First, they argue that Jones's removal from the CDAP did not constitute removal from the aviation service, and that AR 600–105 therefore does not apply. Second, they maintain that AR 600–105 does not apply to the instant circumstances because Jones was not disqualified for professional reasons. Third, the defendants argue that review would be inappropriate because Jones has failed to exhaust available internal administrative remedies. Because we agree with this third argument and affirm the district court's denial of leave to amend the complaint on that basis, we do not reach the first two arguments.

New York law provides Guard members an opportunity to file a "complaint of wrongs" when they are aggrieved by the decision of a superior officer. N.Y. Mil. Law § 131.4 pro-

vides an elaborate mechanism for administrative relief. Its salient features are that a service member who believes himself wronged by his commanding officer, and who has been refused redress by such officer, must file a written complaint with the officer's superior. *See id.;* DMNA Reg. 27–7(8)(June 3, 1994). The complaint must state that it is made in accordance with N.Y. Mil. Law § 131.4, set forth all material facts relating to the incident, and indicate all supporting documents or other written evidence concerning the complaint. *See* DMNA Reg. 27–7(6), (8). The superior officer must then forward the complaint to the Adjutant General, who must examine the matter and take appropriate corrective action. *See* DMNA Reg. 27–7(6). If the Adjutant General refuses redress, the member who initiated the complaint may appeal to the Governor of New York. *See id.*

Jones did not avail himself of these procedures. When General Flynn denied Jones's appeal, a New York State Assembly member wrote a letter to Governor Cuomo on Jones's behalf. Although the letter raised general allegations of misconduct, such as theft of military property, improper promotions, and nepotism, it did not identify itself as a complaint of wrongs made pursuant to N.Y. Mil. Law § 131.4. Nor did it request the specific redress denied Jones—convention of an FEB hearing or readmission to the CDAP. *See id.* The letter further failed to include a statement of all material facts relating to Jones's removal from the CDAP and Flynn's refusal to address that wrong. *See id.* Thus, by failing to appeal to the Governor in the manner outlined in DMNA Reg. 27–7, Jones neglected to exhaust the internal administrative remedies provided by the NYANG.

It has been an open question in this circuit whether a member of a state National Guard must exhaust administrative remedies before seeking equitable relief from a civilian court

**3.** Although he does not so allege in his complaint, Jones's request for an FEB hearing to Flynn, submitted as an exhibit to his complaint and his proposed amended complaint, indicates that Jones was unable to complete instrument flight training in a timely manner, and implies that this was the basis for Colonel Ferreira's decision to remove Jones from the CDAP. Rule

10(c) of the Federal Rules of Civil Procedure provides that "[a] copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes." We therefore rely on the FEB request in assessing the adequacy of Jones's proposed amended complaint. *See Austin v. Ford Models, Inc.,* 149 F.3d 148, 152 (2d Cir.1998).

under § 1983 based on the Guard's failure to follow its own regulations. Several of our sister circuits have imposed an exhaustion requirement on members of state National Guard units seeking equitable relief pursuant to 42 U.S.C. § 1983. *See, e.g., Watson,* 886 F.2d at 1008 (Eighth); *Crawford v. Texas Army Nat'l Guard,* 794 F.2d at 1036 (Fifth); *Thornton v. Coffey,* 618 F.2d 686, 691–92 (10th Cir.1980). We have required exhaustion by members of the United States military. For example, in requiring that a United States Navy reservist exhaust administrative remedies before challenging the Navy's decision to discharge him in *Guitard v. Secretary of Navy,* 967 F.2d 737, 740 (2d Cir.1992), we relied both on the general principle that a party "may not seek federal judicial review of an adverse administrative determination until the party has first sought all possible relief within the agency itself," *id.,* and on the particular need to minimize judicial interference with military discipline, *see id.* at 740–41. *See also Able v. United States,* 88 F.3d 1280, 1288 (2d Cir. 1996) (subject to exceptions, members of United States armed forces may not seek judicial review of military action prior to exhaustion of agency remedies); *Diederich v. Department of Army,* 878 F.2d 646, 647 (2d Cir.1989) ("exhaustion rule applies to most claims against the military").

Consistent with our view that civilian courts must avoid unnecessary interference with state militias as well as the United States military, we hold that NYANG members must exhaust administrative remedies before bringing a federal challenge based on the NYANG's failure to follow its own regulations. We believe that it would interfere unnecessarily with Guard operations were service members allowed to complain of procedural irregularities to the courts without first appealing the error up through the chain of command. By failing to specify to the Governor the harm Jones allegedly suffered, Jones deprived the Governor of an opportunity to order the convention of an FEB hearing, which in turn might have obviated any need for judicial interference in military affairs. *Cf. McCarthy v. Madigan,* 503 U.S. 140, 145, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992) ("The exhaustion doctrine ... acknowledges the commonsense notion ... that an agency ought to have an opportunity to correct its own mistakes ... before it is haled into federal court."). An exhaustion requirement, except in cases of inadequate administrative remedy, irreparable injury, futility, or certain "substantial constitutional question[s]," *Able,* 88 F.3d at 1288, none of which have been claimed here, is the fairest and wisest way to balance the need for noninterference in matters of the NYANG's legitimate discretion with the rights of service members to seek redress in the federal courts.

As Jones correctly argues, absent Congressional direction to the contrary, the exhaustion of administrative remedies is not a prerequisite to bringing an action pursuant to 42 U.S.C. § 1983. *See Patsy v. Board of Regents,* 457 U.S. 496, 516, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982). The Supreme Court has cautioned that the absence of an exhaustion requirement in § 1983 has been explicitly recognized by Congress, *see id.* at 508, 102 S.Ct. 2557, and that "policy considerations alone cannot justify judicially imposed exhaustion unless exhaustion is consistent with congressional intent," *id.* at 513, 102 S.Ct. 2557. For a federal court to impose an exhaustion requirement on its own therefore "would be inconsistent with [congressional intent] ... and would usurp policy judgments that Congress has reserved for itself...." *Id.* at 508, 102 S.Ct. 2557. *See also Felder v. Casey,* 487 U.S. 131, 148–49, 108 S.Ct. 2302, 101 L.Ed.2d 123 (1988) (same).

■ In requiring Jones to exhaust the NYANG's internal remedies before challenging Flynn's failure to convene a FEB hearing, however, we are not crafting an exception to the general rule that § 1983 does not have an exhaustion requirement. *But cf. Penagaricano v. Llenza,* 747 F.2d 55, 61 (1st Cir.1984) (acknowledging general rule that military personnel must exhaust administrative remedies, but questioning whether rule applies in § 1983 actions by National Guard members after *Patsy* ), *overruled on other grounds, Wright,* 5 F.3d at 590–91. The general rule is that NYANG members may not bring a § 1983 action to challenge "pure-

ly discretionary decisions by military officials which are within their valid jurisdiction." *Kurlan,* 510 F.2d at 280; *see also Knutson,* 995 F.2d at 771; *Crawford v. Texas Army Nat'l Guard,* 794 F.2d at 1036. The ability of service members to challenge the NYANG's failure to follow its own regulations is an exception to this rule of non-justiciability. The exhaustion requirement is contained in the very regulations that plaintiff seeks to have enforced. In upholding this exhaustion requirement, therefore, we do not carve out a new exception to the non-exhaustion requirement of § 1983. Instead, we simply clarify the contours of the "regulations" exception to the well established rule that § 1983 does not generally afford a remedy to military personnel challenging discretionary military decisions.

In sum, because Jones failed to appeal Flynn's actions to the Governor of New York pursuant to DMNA Reg. 27–7, and because Jones may not seek damages based on injuries suffered incident to service in the Guard, Jones's proposed amended complaint would be subject to immediate dismissal. As such, the proposed amendment was futile. We hold, therefore, that the district did not abuse its discretion in denying leave to amend the complaint pursuant to Fed. R.Civ.P. 15(a).

## CONCLUSION

The judgment of the district court denying leave to amend the complaint as futile is affirmed. The judgment of the district court dismissing the complaint for lack of subject matter is affirmed.