*Yerkyn v. Yakovlevich*

# United States Court of Appeals
# For the Second Circuit

August Term 2024

Argued: April 10, 2025
Decided: January 16, 2026

No. 24-2962

AMIRKHANOV YERKYN,

*Plaintiff-Appellant*,

v.

KLEBANOV ALEXANDR YAKOVLEVICH, KAN SERGEY VLADIMIROVICH, NATIONAL SECURITY COMMITTEE OF THE REPUBLIC OF KAZAKHSTAN,

*Defendants-Appellees*.

Appeal from the United States District Court
for the Eastern District of New York
No. 23-cv-2399, LaShann DeArcy Hall, *Judge*.

Before: WESLEY, SULLIVAN, and PARK, *Circuit Judges*.

Plaintiff Amirkhanov Yerkyn ("Amirkhanov"), a Kazakhstani businessman who alleges that he was wrongfully detained and coerced into signing a series of unfavorable business agreements in order to secure his release from prison in Kazakhstan, appeals from a judgment of the district court (LaShann DeArcy Hall, *Judge*) that (1) dismissed his claims against the National Security Committee of

Kazakhstan ("NSC") and others who allegedly orchestrated the coercive agreements, and (2) denied him leave to replead violations under the Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. §§ 1961–1968. On appeal, Amirkhanov challenges the district court's determination that the proposed second amended complaint ("SAC") was futile because Amirkhanov did not adequately allege a domestic injury under the RICO statute. Although we conclude that the district court erred in its determination that the lack of a domestic injury deprived it of subject-matter jurisdiction over the claims contained in Amirkhanov's SAC, we nonetheless hold that (1) the district court lacked subject-matter jurisdiction over all claims brought against the NSC, since it is an instrumentality of a foreign sovereign, and therefore not subject to any exception under the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1330, 1602–1611, (2) Amirkhanov failed to state a claim against the remaining Defendants, and (3) any amendment would have been futile. We therefore **AFFIRM** the judgment of the district court.

AFFIRMED.

IRINA SHPIGEL, Shpigel Law P.C., Brooklyn, NY, *for Plaintiff-Appellant*.

PAUL R. NIEHAUS (Craig Tarasoff, *on the brief*), Kirsch & Niehaus PLLC, New York, NY, *for Defendants-Appellees Klebanov Alexandr Yakovlevich and Kan Sergey Vladimirovich.*

KEVIN A. MEEHAN (Joseph D. Pizzurro, Matthew W. Henry, *on the brief*), Curtis, Mallet-Prevost, Colt & Mosle LLP, New York, NY, for *Defendant-Appellee National Security Committee of the Republic of Kazakhstan.*

2

RICHARD J. SULLIVAN, *Circuit Judge*:

Plaintiff Amirkhanov Yerkyn ("Amirkhanov"),[1] a Kazakhstani businessman who alleges that he was wrongfully detained and coerced into signing a series of unfavorable business agreements in order to secure his release from prison in Kazakhstan, appeals from a judgment of the district court (LaShann DeArcy Hall, *Judge*) that (1) dismissed his claims against the National Security Committee of Kazakhstan ("NSC") and others who allegedly orchestrated the coercive agreements, and (2) denied him leave to replead violations under the Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. §§ 1961–1968. On appeal, Amirkhanov challenges the district court's determination that the proposed second amended complaint ("SAC") was futile because Amirkhanov did not adequately allege a domestic injury under the RICO statute. Although we conclude that the district court erred in its determination that the lack of a domestic injury deprived it of subject-matter jurisdiction over the claims contained in Amirkhanov's SAC, we nonetheless hold that (1) the district court lacked subject-matter jurisdiction over all claims brought against the NSC, since it is an

---

[1] In accordance with Kazakhstani naming conventions, the caption lists each individual party's family name first followed by his given name and, if applicable, middle name. Accordingly, we refer to Plaintiff as Amirkhanov.

instrumentality of a foreign sovereign, and therefore not subject to any exception under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1330, 1602–1611, (2) Amirkhanov failed to state a claim against the remaining Defendants, and (3) any amendment would have been futile. We therefore affirm the judgment of the district court.

## I. BACKGROUND

Amirkhanov, his wife, and Defendants Klebanov Alexandr Yakovlevich and Kan Sergey Vladimirovich (the "Individual Defendants") were the sole shareholders of an influential energy company in Kazakhstan called Central Asian Power-Energy Company ("CAPEC").[2] Founded during the privatization of Kazakhstan's economy in the 1990s, CAPEC now provides electricity to almost all northern Kazakhstan; it is valued around $450 million. In 2004, CAPEC acquired Eximbank of Kazakhstan ("Eximbank"), at which time Amirkhanov became chairman of the bank's board.

During Amirkhanov's five-year tenure as chairman of Eximbank – but without his knowledge – the Individual Defendants misappropriated funds held

---

[2] Because this case comes to us on an appeal from a motion to dismiss, "we accept the material facts alleged in the complaint as true and draw all reasonable inferences in favor of the plaintiff." *In re Nine W. LBO Sec. Litig.*, 87 F.4th 130, 140 (2d Cir. 2023).

4

in Eximbank's account with the Federal Reserve Bank of New York, which they transferred to other accounts held at various intermediary banks in New York. The Individual Defendants then further disguised these funds by using fictitious loans to shuttle them to companies they controlled, including a Dubai-based entity called Lodestar Holdings Limited ("Lodestar") and a U.S.-based company named Forte Marketing, LLC ("Forte"). Along the way, the funds were used to pay back a Russian billionaire who had helped bribe Kazakhstan's then-president, Nursultan Nazarbayev. The loans were also used to bribe Karim Massimov, a former prime minister of Kazakhstan who later served as the head of the NSC, a Kazakhstani intelligence agency that investigates and prosecutes crimes "related to [] matters of [the] security and sovereignty of the state." J. App'x at 41.[3]

The SAC alleges that as Eximbank's financial position became increasingly precarious, the Individual Defendants conspired with Massimov to frame Amirkhanov for the bribes and theft of bank assets. In May 2018, the NSC arrested Amirkhanov in Kazakhstan and charged him with bribery. During his three-month detention, Amirkhanov was subjected to "psychological torture" and coerced into signing a series of unfavorable business agreements to secure his

_____

[3] Massimov was subsequently sentenced to 18 years' imprisonment for corruption-related offenses.

5

freedom. *Id.* at 42. Those agreements included (1) the transfer of his CAPEC shares to the Individual Defendants in exchange for their worthless Eximbank shares, (2) Amirkhanov's personal assumption of all debts and obligations of Eximbank, and (3) as relevant here, the waiver of "all claims against any organizations[] [or] [] employees of the CAPEC group of companies, Eximbank Kazakhstan JSC, [and] Lodestar Holding Limited." *Id.* at 45 (internal quotation marks omitted).

Following his release from custody, Amirkhanov pursued legal action in Kazakhstan against the NSC and the Individual Defendants to no avail. He then filed a *pro se* complaint in the United States District Court for the Eastern District of New York, where he now resides. In his first amended *pro se* complaint ("FAC"), Amirkhanov asked the district court to (1) "recognize as illegal the Agreement[s] . . . signed in custody in the detention facility," (2) "cancel illegal decisions taken by the courts of the Republic of Kazakhstan in pursuance of [the] contracts and agreements," and (3) award damages. *Id.* at 90. After the NSC and Individual Defendants (together, "Defendants") moved to dismiss, Amirkhanov obtained counsel. Rather than oppose the motion, however, counsel requested leave to file the proposed SAC, which included new claims alleging violations of

6

the RICO statute, the Alien Tort Statute, and the Torture Victim Protection Act, 28 U.S.C. § 1350, as well as state-law claims for unjust enrichment, misappropriation, and conversion. The SAC also proposed adding as defendants Lodestar, Forte, Massimov, and various other "individuals and entities, presently unknown" who "participated and aided in the scheme." J. App'x at 27–28.

The district court dismissed the FAC for lack of subject-matter jurisdiction and denied Amirkhanov leave to file the proposed SAC on grounds of futility. *See* Fed. R. Civ. P. 12(b)(1), 15(a)(2). The court first explained that Amirkhanov, a "permanent resident alien," could not invoke the court's diversity jurisdiction to "sue[] a non-resident alien [like Defendants]." J. App'x at 17 (internal quotation marks omitted); *see* 28 U.S.C. § 1332(a)(2). The district court also rejected Amirkhanov's argument that the Alien Tort Statute conferred jurisdiction, since each of the alleged tortious acts took place in Kazakhstan.[4] Finally, the court concluded that it lacked jurisdiction under RICO because Amirkhanov had failed to allege a "domestic injury to [his] business or property." J. App'x at 18 (internal quotation marks omitted). On appeal, Amirkhanov challenges only the district

---

[4] The district court did not conduct a separate analysis with respect to the Torture Victim Protection Act, but Amirkhanov does not challenge the dismissal of those claims on appeal.

7

court's conclusion that the proposed SAC was futile because he did not plausibly allege a domestic injury under the RICO statute.

## II. DISCUSSION

Federal Rule of Civil Procedure 15(a)(2) provides that "[a] court should freely give leave" to amend "when justice so requires." Nonetheless, such leave may be denied "for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *Holmes v. Grubman*, 568 F.3d 329, 334 (2d Cir. 2009) (internal quotation marks omitted). Though we ordinarily review a district court's denial of leave to amend for abuse of discretion, *see id.*, where, as here, the denial was based on futility, our review is *de novo*, *see Jones v. N.Y. State Div. of Mil. & Naval Affs.*, 166 F.3d 45, 49 (2d Cir. 1999). In such cases, the inquiry is "comparable to that required upon a motion to dismiss pursuant to [Federal Rule of Civil Procedure] 12(b)(6)." *Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 604 (2d Cir. 2005) (internal quotation marks omitted). We therefore ask whether, accepting Amirkhanov's allegations as true and construing them in his favor, he has alleged facts sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

8

The district court found that Amirkhanov's SAC would not survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) because the lack of a domestic injury foreclosed subject-matter jurisdiction under RICO. But whether a plaintiff satisfies RICO's domestic-injury requirement concerns his ability to state a claim under *that* statute – not whether the court has subject-matter jurisdiction over the case. *See Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 129–30 (2d Cir. 2003), *abrogated on other grounds as recognized by Am. Psych. Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352 (2d Cir. 2016); *Eliahu v. Jewish Agency for Israel*, 919 F.3d 709, 713 (2d Cir. 2019) (holding that plaintiffs failed to state a plausible claim for relief because they did not satisfy RICO's domestic-injury requirement). Nonetheless, before examining whether the allegations in the SAC would survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), we have a "special obligation" to first consider our jurisdiction over Amirkhanov's RICO claims. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 95 (1998) (internal quotation marks omitted).

**A.    The Foreign Sovereign Immunities Act Bars Amirkhanov's Claims Against the NSC.**

The NSC contends that the district court properly denied Amirkhanov's motion to amend the complaint because the proposed amendments "do not allege a basis for subject[-]matter jurisdiction" under the FSIA.  NSC Br. at 14.  We agree.

The FSIA "provides the sole basis for obtaining jurisdiction over a foreign state in the courts of this country."  *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 443 (1989).  Foreign sovereigns – as well as their agencies and instrumentalities, like the NSC – are presumptively immune from suit.  *See Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993); 28 U.S.C. § 1603(a), (b).  And unless a specified exception applies, federal courts lack subject-matter jurisdiction to hear claims against them.  *Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480, 488–89 (1983).

Amirkhanov counters that the so-called commercial-activity exception applies here.  *See* 28 U.S.C. § 1605(a)(2).  Under that exception, a foreign state does not enjoy immunity from an action that:

> [(1)] is based upon a commercial activity carried on in the United States by the foreign state; or [(2)] upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or [(3)] upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States.

10

*Id.* The "commercial activity" may be "either a regular course of commercial conduct or a particular commercial transaction or act." *Id.* § 1603(d). And whether an activity qualifies as "commercial" is "determined by reference to" its "nature" rather than its "purpose." *Id.* Finally, a foreign state engages in "commercial activity" for FSIA purposes only when it acts "in the manner of a private player within [the market]." *Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 614 (1992); *see also Nelson*, 507 U.S. at 359–60.

Amirkhanov asserts that the NSC engaged in "commercial activity" by detaining him and forcing him to sign agreements that financially benefited the Individual Defendants. *See* Reply Br. at 24 (referring to the NSC as the "commercial enforcer"). We disagree for the simple reason that the NSC's alleged conduct "boils down to [an] abuse of the power of its police," which cannot be spun as an activity that is commercial in "nature." *Nelson*, 507 U.S. at 361; 28 U.S.C. § 1603(d). "[H]owever monstrous such abuse undoubtedly may be," courts have long interpreted "a foreign state's exercise of the power of its police" as "peculiarly sovereign in nature." *Nelson*, 507 U.S. at 361.

The Supreme Court rejected an argument similar to Amirkhanov's in *Nelson*. There, an American engineer working at a hospital in Saudi Arabia alleged that he

11

was detained and coerced into signing an agreement by the Saudi government in retaliation for whistleblowing against a state-owned hospital. *See id.* at 352–54. He sued the Saudi government, the hospital, and the hospital's U.S. purchasing agent. *See id.* at 351. Although the state entities benefited financially from the suppression of Nelson's reports of safety concerns, the Court rejected his attempt to bring the Saudi government's abusive conduct within the commercial-activity exception because it was not acting "in the manner of a private player within the market." *Id.* at 360 (internal quotation marks omitted).

As in *Nelson*, Amirkhanov characterizes the NSC's conduct as "financial crimes, contract coercion, and banking interference for private benefit." Reply Br. at 24. While "criminal acts" may qualify as commercial if they "are ones in which private parties could engage" and are "committed in the course of business or trade," *United States v. Turkiye Halk Bankasi, A.S.*, 16 F.4th 336, 349 n.55 (2d Cir. 2021) (internal quotation marks omitted), *aff'd in part, vacated in part, remanded*, 598 U.S. 264 (2023), we have little doubt that the "powers allegedly abused [here] were those of police and penal officers," *Nelson*, 507 U.S. at 363. In such cases, it is irrelevant "whether the foreign government is acting with a profit motive or instead with the aim of fulfilling uniquely sovereign objectives," *Anglo-Iberia*

*Underwriting Mgmt. v. P.T. Jamsostek*, 600 F.3d 171, 177 (2d Cir. 2010) (internal quotation marks omitted), because the relevant question under the commercial-activity exception is the actor's "behavior, not motivation," *Nelson*, 507 U.S. at 360. We therefore conclude that the NSC's activities do not abrogate its presumptive immunity from suit, and that we lack subject-matter jurisdiction over Amirkhanov's claims against it. *See Blue Ridge Invs., L.L.C. v. Republic of Argentina*, 735 F.3d 72, 83 (2d Cir. 2013) ("The only source of subject[-]matter jurisdiction over a foreign sovereign or its instrumentalities in the courts of the United States is the FSIA.").

**B.     The District Court Properly Denied Amirkhanov's Motion to Amend Because the SAC Does Not Plausibly Allege a Domestic Injury Under RICO Against the Individual Defendants.**

The Individual Defendants do not enjoy the NSC's presumptive immunity from suit, so we proceed to the merits of Amirkhanov's claims against them. As noted above, the district court mistakenly dismissed Amirkhanov's RICO claims against all Defendants for lack of subject-matter jurisdiction based on its conclusion that Amirkhanov failed to adequately allege a domestic injury under the RICO statute. But while it is true that the district court incorrectly relied on Federal Rule of Procedure 12(b)(1) to dismiss Amirkhanov's RICO claims, we nevertheless hold that denial of Amirkhanov's motion to amend and dismissal of

13

his complaint was proper because Amirkhanov failed to plead and prove a domestic injury under RICO. *See* Fed. R. Civ. P. 12(b)(6); *United States v. Barker*, 723 F.3d 315, 319 (2d Cir. 2013) (explaining that we are "free to affirm an appealed decision on any ground which finds support in the record, regardless of the ground upon which the trial court relied" (internal quotation marks omitted)).

RICO prohibits activities linked to "pattern[s] of racketeering activity," 18 U.S.C. § 1962, and creates both criminal liability and a standalone civil cause of action that permits "[a]ny person injured in his business or property by reason of a violation of [RICO]" to sue for treble damages, costs, and fees, *id.* § 1964(c). But the civil RICO statute "does not overcome" the well-known "presumption against extraterritoriality." *RJR Nabisco v. Eur. Cmty.*, 579 U.S. 325, 346 (2016); *see also* A. Scalia & B. Garner, *Reading Law* 268–72 (2012). To state a cause of action under section 1964(c), then, a private RICO plaintiff "must allege and prove a *domestic* injury to its business or property." *RJR Nabisco*, 579 U.S. at 346. Civil RICO claims "rest[ing] entirely on injury suffered abroad [] must be dismissed." *Id.* at 354.

Courts assessing whether a plaintiff suffered a domestic injury "engage in a case-specific analysis that looks to the circumstances surrounding the injury," examining "the nature of the alleged injury, the racketeering activity that directly

14

caused it, and the injurious aims and effects of that activity." *Yegiazaryan v. Smagin*, 599 U.S. 533, 544–45 (2023) (footnote omitted). If the circumstances "ground the injury in the United States," and "it is *clear* the injury arose domestically, then the plaintiff has alleged a domestic injury." *Id.* at 545 (emphasis added).

Here, the SAC alleged six predicate crimes that "directly caused" Amirkhanov to sign the waiver, *id.* at 544: (1) wire fraud in violation of 18 U.S.C. § 1343; (2) bank fraud in violation of 18 U.S.C. § 1344; (3) money laundering in violation of 18 U.S.C. §§ 1956–1957; (4) the payment of bribes in violation of 18 U.S.C. § 201; (5) extortion in violation of 18 U.S.C. § 1951; and (6) theft and conversion in violation of New York Law. On appeal, Amirkhanov asserts that the "economic harm caused by [the Defendants'] misuse of U.S.-based financial systems," including the relinquishment of his otherwise "actionable U.S. claims" against the Delaware-based Forte, constituted a domestic injury. Amirkhanov Br. at 2; *see id.* at 12–13. We disagree.

A "context-specific" approach focusing on "the circumstances surrounding [Amirkhanov's] alleged injury," as well as "its injurious aims and effects" reveals that Amirkhanov has not pleaded sufficient facts to allege a domestic injury.

15

*Yegiazaryan*, 599 U.S. at 543–44. For starters, the vast majority of the allegations point to activity that occurred in Kazakhstan, was perpetrated by Kazakhstani citizens, and took place under the auspices of Kazakhstani law.[5] *See, e.g.*, J. App'x at 39 (alleging that Klebanov "used his official leadership position [with CAPEC and Eximbank] to manipulate the employees of the Bank and CAPEC for his own personal purposes"). Put simply, the complaint points primarily to activities that were neither "conceived" nor "executed," Amirkhanov Br. at 20, in the United States, and therefore do not constitute a domestic injury under RICO, *see RJR Nabisco*, 579 U.S. at 354.

Amirkhanov's reliance on the Individual Defendants' use of the American financial system to conduct their illicit scheme does not change the result. Indeed, we have held that "a defendant's use of the U.S. financial system . . . does not, on its own, turn an otherwise foreign injury into a domestic one." *Bascuñán v. Elsaca*, 874 F.3d 806, 819 (2d Cir. 2017). Here, the alleged use of New York-based bank accounts with respect to the wire fraud, bank fraud, and money laundering predicates – which constitute "the heart of the injury" Amirkhanov has alleged, Amirkhanov Br. at 22 – does not singlehandedly create a domestic injury, *see*

---

[5] We note that Kazakhstani courts have already dismissed Amirkhanov's criminal and civil complaints against the Individual Defendants.

16

*Bascuñán*, 874 F.3d at 819. To conclude otherwise would "effectively eliminate the effect of the domestic injury requirement in a large number of cases," including this one. *Id.* Even if Amirkhanov could establish *some* link between the Individual Defendants' use of the American banking system in 2009, *see* Amirkhanov Br. at 9, and the waiver that he signed in 2017, *see id.* at 12, that by itself would be insufficient to transform his injury into a domestic one. *See Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247, 266 (2010) (emphasizing that "the presumption against extraterritorial application would be a craven watchdog indeed if it retreated to its kennel whenever *some* domestic activity is involved in the case"). The "circumstances surrounding" the Individual Defendants' alleged racketeering activity therefore demonstrate that Amirkhanov's injury did not arise domestically. *Yegiazaryan*, 599 U.S. at 543.

Even so, we must consider whether the "effect" of the alleged racketeering activity, *Bascuñán*, 874 F.3d at 819, nonetheless "ground[s] [Amirkhanov's] injury in the United States," *Yegiazaryan*, 599 U.S. at 545. Amirkhanov contends that the Individual Defendants' procurement of a waiver "preclud[ing] him from filing any claims against organizations within the CAPEC group, including Eximbank and Lodestar," "logically extends" to any potential legal claims that he may have

against Delaware-based Forte, which was operated as an "alter ego by Klebanov and his associates." Amirkhanov Br. at 12. This, he says, represents a cognizable domestic injury under RICO, and thus an adequate ground that permits "free[]" amendment of his complaint. *See* Fed. R. Civ. P. 15(a)(2).

Once again, we are unpersuaded. To begin, the SAC nowhere alleges that Amirkhanov was coerced into waiving claims against *Forte* as opposed to "claims against [the Individual Defendants], CAPEC, and Lodestar Holdings," J. App'x at 59; *see id.* at 45, 53, which are not American companies. The purported "agreement" containing the waiver of legal claims likewise does not mention Forte. The SAC instead contains one threadbare assertion that "[u]pon information and belief . . . [Forte] is the alter ego of the Defendants," whose "different entity names [] will be revealed through discovery." *Id.* at 27. But to survive a motion to dismiss, Amirkhanov must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), allowing us "to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Iqbal*, 550 U.S. at 678. We are not obliged – or indeed permitted – to credit "mere conclusory statements" or "a legal conclusion couched as a factual allegation." *Id.* (internal quotation marks omitted). While

18

Amirkhanov attempts to build out both his "alter ego" theory and his potential causes of action against Forte on appeal, our caselaw is clear "that [Amirkhanov] may not amend pleadings through a[n appellate] brief." *Gamma Traders – I LLC v. Merrill Lynch Commodities, Inc.*, 41 F.4th 71, 80 (2d Cir. 2022) (internal quotation marks omitted).

The Supreme Court, to be sure, has recognized that interference with a plaintiff's ability to collect a judgment could constitute a domestic injury for purposes of a civil RICO suit. In *Yegiazaryan*, for example, the defendant – a California resident – "took domestic actions to avoid collection" of an already extant federal-court judgment against him by "creating U.S. shell companies to hide his U.S. assets, submitting a forged doctor's note to a California District Court, and intimidating a U.S.-based witness." 599 U.S. at 545. The Court explained that the defendant's actions, which were "taken in California or directed from California," had "the aim and effect of subverting [the plaintiff's] rights to execute on that judgment in California." *Id.* at 546. Consequently, the "racketeering activity that caused the injury occurred in the United States," and its "injurious effects . . . largely manifested" there. *Id.* at 545–46.

But that is not the case here. Amirkhanov has no domestic judgment in hand. The pattern of racketeering activity that he alleges was conceived in Kazakhstan, carried out by Kazakhstani citizens in Kazakhstan under Kazakh legal authority, and felt primarily in Kazakhstan. What is more, the SAC does not allege that Amirkhanov intended or would even be able to bring a claim against Forte in an American court. Although Amirkhanov asserts that the Individual Defendants funneled $25 million through Forte to pay back a loan that had been used to bribe Nazarbayev (the former president of Kazakhstan), the SAC fails to identify what causes of action Amirkhanov could have brought against Forte under New York law based on that conduct.

We therefore agree with the district court that the SAC failed to allege "a domestic injury to [Amirkhanov's] business or property." *RJR Nabisco*, 579 U.S. at 346 (emphasis deleted). Though the court erred in dismissing Amirkhanov's complaint against the Individual Defendants for lack of subject-matter jurisdiction rather than for failure to state a claim, it properly denied Amirkhanov's request for leave to file the SAC as futile.[6] *See Barker*, 723 F.3d at 319.

---

[6] Because Amirkhanov failed to plausibly allege any federal claim, there is no basis for the exercise of supplemental jurisdiction over his state-law claims. *See* 28 U.S.C. § 1367.

20

### III. CONCLUSION

For the reasons stated above, we **AFFIRM** the judgment of the district court.