**Valerie A. SAAD, Plaintiff,**

v.

**John H. DALTON, Secretary of the Navy; Vice Admiral R.J. Zlatoper, U.S. Navy Personnel; Rear Admiral Maryanne Stratton, Nurse Corps, U.S. Navy, Director Navy Nurse Corps; Rear Admiral Richard A. Nelson, Commander, Naval Medical Center, San Diego, California; Captain Barbara O'Brien, Nurse Corps, U.S. Navy, Director of Nursing Services, Naval Medical Center, San Diego, California, Defendants.**

No. CV 93–1472 H(POR).

United States District Court, S.D. California.

March 1, 1994.

Christopher J. Reeber, Lee, Principi & Reeber, for plaintiff.

J. Stephen Allen, Sp. Asst. U.S. Atty., for defendants.

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

HUFF, District Judge.

### INTRODUCTION

On September 28, 1993, the court denied the plaintiff's motion for a temporary restraining order. The plaintiff was an officer in the United States Naval Reserve and sought an order enjoining the defendant from separating her from active duty. After the court denied the plaintiff's motion, the defendant separated the plaintiff from duty based on her failure to comply with the Navy's standards for physical readiness. The defendant now moves the court to dismiss the complaint or, in the alternative, for summary judgment. Because the court finds the plaintiff has not exhausted her available remedies provided for by Congress, the court grants the defendant's motion to dismiss.

### BACKGROUND

Prior to her separation, the plaintiff was a Lieutenant Commander, Nurse Corps, in the United States Navy. On September 30, 1993, the Navy involuntarily separated the plaintiff from her position. The Navy separated the plaintiff due to her failure to comply with the Navy's physical readiness standards. The Navy adopted the physical readiness standards to ensure military readiness, maximize performance of individual service members, and reduce the cost of military health care programs.

Obesity control is a component of the physical readiness program. The defendant asserts obesity is associated with hypertension, hypercholesterolemia, diabetes, and is considered a risk factor for cardiovascular disease. The defendant uses a body fat composition test to determine if an individual is deemed obese. Female body fat percentage is determined by adding the waist and hip measurements, subtracting the neck measurement, and comparing this value against the height measurement from a uniform chart. A body fat percentage measurement equal to or greater than 26% for men and 36% for women indicates possible obesity.

On several occasions, the plaintiff's body fat composition exceeded the 36% limitation. In September 1988, the plaintiff was admitted to an inpatient obesity rehabilitation program at the Naval Hospital in Portsmouth, Virginia. Her body fat composition tests fell within the acceptable percentage standards following her completion of this program.

On May 13, 1992, the plaintiff's body fat composition was 40%. From that date until September 1992, the plaintiff's body fat composition remained at 40% to 42%. In October 1992, her body fat composition was 39%. Her body fat composition ranged from 35% to 38% between October 1992 and December 7, 1992. The plaintiff's body fat composition consisted of 39% on December 18, 1992; 32% on March 30, 1993; and 36% and 39% on April 1, 1993.

On November 20, 1992, the plaintiff was advised to show cause for retention based on the following alleged substandard performance of duty:

(1) Failure to demonstrate acceptable qualities of leadership required of an officer in her grade as evidenced by her non-compliance with Navy standards for physical readiness.

(2) Failure to conform to prescribed standards of physical readiness as evidenced by her being diagnosed as obese.

(3) Failure of Level III treatment of overeaters as evidenced by her body fat percent in excess of 41% in October 1992.

On April 1, 1993, a Board of Inquiry was held. This Board consisted of two females and one male. After considering the testimony of witnesses and exhibits, the Board found, by a vote of three to zero, that the plaintiff had failed to comply with Navy stan-

dards. Consequently, the Board, again by a vote of three to zero, recommended the plaintiff be separated from the naval service for substandard performance of duty. The Chief of Naval Personnel then reviewed the Board's findings. The Chief adopted the Board's recommendations and ordered the plaintiff separated.

The plaintiff alleges the separation is unconstitutional because (1) the body fat percentage limitation has no rational relationship to job performance and (2) the test used by the Navy to determine appropriate body fat percentage appears to have a substantial adverse and discriminatory impact upon women.

## DISCUSSION

 The defendant moves the court to dismiss the complaint because the plaintiff has not pursued administrative remedies provided for military personnel. The plaintiff has not sought relief from Board for the Correction of Naval Records ("BCNR"). The BCNR is composed of civilians and has the power to correct a military record to correct an error or to remove an injustice. 10 U.S.C. § 1552; *Chappell v. Wallace,* 462 U.S. 296, 303, 103 S.Ct. 2362, 2367, 76 L.Ed.2d 586 (1983). The BCNR has broad equitable powers to order the reinstatement and back pay of individual service members. *Chappell,* 462 U.S. at 303, 103 S.Ct. at 2367.

 Due to the special relationship between the military and its personnel, a plaintiff is ordinarily required to pursue remedies provided for by Congress before resorting to judicial review. *Id.* This exhaustion requirement results from Congress' near sole authority over the military.

> Judges are not given the task of running the Army. The responsibility for setting up channels through which ... grievances can be considered and fairly settled rests upon the Congress and upon the President of the United States and his subordinates. The military constitutes a specialized community governed by a separate discipline from that of the civilian. Orderly government requires that the judiciary be as scrupulous not to interfere with legitimate [military] matters as the [military] must be

scrupulous not to intervene in judicial matters.

The Ninth Circuit also has expressly required military personnel to exhaust "available intraservice remedies" before pursuing judicial review. *Christoffersen v. Washington State Air Nat'l Guard,* 855 F.2d 1437, 1442 (9th Cir.1988); *Muhammad v. Secretary of Army,* 770 F.2d 1494, 1495 (9th Cir. 1985).

The court finds the plaintiff may not pursue judicial review before petitioning the BCNR for relief. The plaintiff seeks judicial review of a discharge based on failure to comply with physical readiness tests. The Ninth Circuit has warned courts to exercise caution before intervening in "military transfer decisions [which] go to the core of deployment of troops and overall strategies of preparedness." *Christoffersen,* 855 F.2d at 1444. Until the plaintiff proceeds before a Board established by Congress to resolve military personnel disputes, this court will not address (1) whether the court has the authority to review the claims or (2) if so, the merits of those claims.

The plaintiff cites the recent Supreme Court case of *Darby v. Cisneros,* —— U.S. ——, 113 S.Ct. 2539, 125 L.Ed.2d 113 (1993) for the proposition that the plaintiff need not exhaust her available remedies. The court finds this case to be clearly distinguishable. The *Darby* case involved the interpretation of the Administrative Procedure Act in the context of a Department of Housing and Urban Development administrative ruling. Review of military personnel actions, however, is a unique context with specialized rules limiting judicial review. *Chappell,* 462 U.S. at 301–04, 103 S.Ct. at 2366–68. Accordingly, the court dismisses the plaintiff's complaint for failure to exhaust available administrative remedies.

IT IS SO ORDERED.