**Donald J. DIBBLE, Plaintiff–Appellee,**

v.

**John H. FENIMORE, V, Major General, New York Air National Guard, Defendant–Appellant,**

**and**

**Secretary of the Air Force F. Whitten Peters, Defendant.**

**No. 00–6243.**

United States Court of Appeals, Second Circuit.

Argued: Feb. 14, 2001.

Decided: Aug. 8, 2003.

Michael S. Buskus, Assistant Solicitor General, for Eliot Spitzer, Attorney General of the State of New York (Nancy A. Spiegel, Assistant Solicitor General; Peter H. Schiff, Senior Counsel, on the briefs), Albany, New York, for defendant-appellant.

Daniel M. Schember, Gaffney & Schember, P.C., Washington, D.C., for plaintiff-appellee.

Before: KEARSE, LEVAL and KATZMANN, Circuit Judges.

LEVAL, Circuit Judge.

Defendant-appellant John Fenimore is Major General and Commander of the New York Air National Guard ("Air Guard" or "Guard"). Plaintiff-appellee Donald J. Dibble was a staff sergeant with

the Air Guard.[1] In late 1994, Dibble was ordered honorably discharged from the Guard and denied the opportunity to re-enlist.[2] Following his dismissal (and the unsuccessful pursuit of various intra-military administrative remedies), Dibble brought this action in the United States District Court for the Northern District of New York (Kahn, *J.*), claiming that he was unlawfully denied re-enlistment in retaliation for his constitutionally and statutorily protected activities as a union steward.[3] Fenimore moved to dismiss, arguing, inter alia, that Dibble's claims were non-justiciable under the doctrine of intra-military immunity. The district court denied the motion and on reconsideration, adhered to its decision. Fenimore brought this appeal.[4]

This case presents two issues: (1) whether the interlocutory order denying the motion of the Commander of the State National Guard to dismiss the suit by reason of the doctrine of intra-military immunity is immediately appealable under the collateral order rule of *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949); and (2) if so, whether such a suit is non-justiciable under the doctrine of intramilitary immunity. For the reasons set forth below, we conclude that (1) the district court's order was immediately appealable and (2) that

defendant's motion to dismiss should have been granted.

## DISCUSSION

### A. Appealability

■ Interlocutory orders of federal district courts are not ordinarily appealable until the rendition of a final decision. *See* 28 U.S.C. § 1291. A "final decision" is one that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Van Cauwenberghe v. Biard*, 486 U.S. 517, 521, 108 S.Ct. 1945, 100 L.Ed.2d 517 (1988) (quoting *Catlin v. United States*, 324 U.S. 229, 233, 65 S.Ct. 631, 89 L.Ed. 911 (1945)). An order denying a defendant's motion to dismiss on the grounds of intramilitary immunity is certainly not "final"; indeed, such an order "ensures that litigation will continue in the District Court." *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 275, 108 S.Ct. 1133, 99 L.Ed.2d 296 (1988). In limited circumstances, however, federal appellate courts may review nonfinal orders. For example, under the collateral order rule of *Cohen*, appeals may be taken in "that small class which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be de-

---

1. Dibble's staff sergeant position is classed as federally excepted civilian employment. Dibble was required by 32 U.S.C. § 709(b) to maintain military membership in the Air Guard as a condition of this employment.

2. The stated reason for Dibble's dismissal was his "performance in a military capacity."

3. Specifically, Dibble alleges that he was dismissed as a result of his exercise of (1) his right under 5 U.S.C. § 7102 to assist and act for a labor organization; (2) his right under 32 U.S.C. § 709(e)(5) (since recodified as 32 U.S.C. § 709(f)(4)) and Technician Personnel

Regulation (TPR) 752 § 2–17, Element 6(b), to appeal (successfully) his thirty-day suspension from employment; and (3) his First Amendment right to associate in a union and to speak freely in furtherance of his and fellow employees' rights.

4. The suit also named the Secretary of the United States Air Force. As to that defendant, the district court remanded the case to the Air Force Board for the Correction of Military Records for administrative proceedings. Those proceedings are still pending.

ferred until the whole case is adjudicated." *Cohen* at 546, 69 S.Ct. 1221.

District court orders denying claims of immunity are at times held appealable, because, as appellant notes, immunity is intended to shield the defendant not only from an adverse outcome, but also from the burden of having to go through the litigation process at all. As the Supreme Court has observed with respect to a state officer's immunity from a suit alleging a constitutional tort under 42 U.S.C. § 1983, the defense is "an immunity from suit rather than a mere defense to liability; and ... it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). This court has applied the collateral order rule to permit appeals from district court orders denying a wide variety of immunity claims. *See, e.g., Transatlantic Shiffahrtskontor GmbH v. Shanghai Foreign Trade Corp.,* 204 F.3d 384, 387 (2d Cir.2000) (Foreign Sovereign Immunities Act immunity); *Baker v. Coughlin,* 77 F.3d 12, 14 n. 2 (2d Cir.1996) (official immunity under state law); *Goldberg v. Town of Rocky Hill,* 973 F.2d 70, 72 (2d Cir.1992) (municipal immunity); *Smith v. Reagan,* 841 F.2d 28, 30 (2d Cir.1988) (Eleventh Amendment immunity); *Barrett v. United States,* 798 F.2d 565, 570–71 (2d Cir.1986) (prosecutorial immunity). *But see In re "Agent Orange" Prod. Liab. Litig.,* 745 F.2d 161, 162 (2d Cir.1984) (rejecting an interlocutory appeal from an order denying a defense of intramilitary immunity).

Under the collateral order rule, a prejudgment order is eligible for immediate interlocutory appeal if it satisfies three criteria: It "must conclusively determine the disputed question, resolve an important issue completely separate from the merits of the action, and be effectively unreviewable [upon the eventual] appeal from a final judgment." *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 468, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978). The orders appealed in this case satisfy these three standards. First, there is no dispute that they "conclusively determine" the availability of the immunity defense. Second, the immunity question is separate from the merits of the action.[5] And as to the third requirement, we conclude that the interlocutory order is "effectively unreviewable" on appeal from a final judgment because an important element "of absolute immunity is its possessor's entitlement not to have to answer for his conduct in a civil damages action." *Mitchell v. Forsyth,* 472 U.S. 511, 525, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985) (citing *Nixon v. Fitzgerald,* 457 U.S. 731, 102 S.Ct. 2690, 73 L.Ed.2d 349 (1982)). The defendant would irrevocably lose this benefit of immunity if obligated to defend the case at trial.

The Supreme Court appears to take this view of the nature of the right, at least with respect to claims of immunity made by officers in the active U.S. military. In *United States v. Stanley,* 483 U.S. 669, 107 S.Ct. 3054, 97 L.Ed.2d 550 (1987), the

---

5. The factual record on appeal is somewhat spare, making it difficult to assess whether there are any material facts genuinely in dispute that would bear on the applicability of intramilitary immunity. As this court has noted previously, "[w]here ... resolution of the immunity defense requires the adjudication of issues of fact that are inseparable from the merits, the denial is not immediately appealable." *Tolbert v. Queens College,* 164 F.3d 132, 138 (2d Cir.1999); *see also Behrens v. Pelletier,* 516 U.S. 299, 312–13, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996); *Johnson v. Jones,* 515 U.S. 304, 313, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995). The pleadings are, however, clear enough for us to conclude with relative confidence that the availability of an immunity defense does not turn on the resolution of any disputed questions of fact.

Court suggested that the process of defending a lawsuit, not merely the end result, compromises military discipline and thus gives rise to immunity. Concerned by the prospect of "compelled depositions and trial testimony by military officers concerning the details of their military commands," the *Stanley* court explained that if a subordinate were allowed to prosecute a lawsuit against his superior officer, "the mere process of arriving at correct conclusions would disrupt the military regime." *Stanley*, 483 U.S. at 682–83, 107 S.Ct. 3054. *See also Stencel Aero Eng'g Corp. v. United States*, 431 U.S. 666, 673, 97 S.Ct. 2054, 52 L.Ed.2d 665 (1977) ("The trial would ... involve second-guessing military orders, and would often require members of the Armed Services to testify in court as to each other's decisions and actions."). We see no reason why this logic would apply with any less force to claims brought by members of the National Guard. *See Jones v. N.Y. State Div. of Military & Naval Affairs*, 166 F.3d 45, 51 (2d Cir.1999) ("[A]bsent some reasoned distinction, justiciability of constitutional tort actions incident to federal and state military service should be co-extensive.").

Intramilitary immunity is designed to protect a defendant from the obligation to participate in the litigation, and not merely from an adverse result. The loss of such a benefit cannot be vindicated by appeal from an adverse final judgment. Were we required to refrain from hearing an appeal of an interlocutory order denying a claim of intramilitary immunity, the benefit claimed by the defendant (freedom from the burden of suit) would be irrevocably lost by the time we were able to hear his claim.

We are mindful of our decision in *In re "Agent Orange" Product Liability Litigation*, 745 F.2d 161, in which we declined to exercise jurisdiction over an interlocutory appeal challenging an order denying dismissal on intramilitary immunity grounds. However, we believe *Agent Orange* to be both distinguishable on its facts and in large part superceded by subsequent decisions of the Supreme Court. As to the facts, the order appealed from in *Agent Orange* was "tentative" in its wording, thus raising doubt whether it "conclusively determined" the question of immunity. *Id.* at 163–64. Furthermore, *Agent Orange* relied on an understanding of the intramilitary immunity doctrine since rejected by the Supreme Court. We held in *Agent Orange* that intramilitary immunity was "inextricably intertwined" with the merits of the action because it was "difficult to predict whether a finding of liability [would] undermine military discipline" without a more complete factual record. *Id.* at 164. Subsequent Supreme Court cases have rejected a particularized inquiry into the effect a suit will have on discipline in determining claims of intramilitary immunity, applying the doctrine instead whenever a plaintiff's injury "arises out of activity incident to [military] service." *Stanley*, 483 U.S. at 681, 107 S.Ct. 3054 (internal quotation marks omitted). *See also United States v. Shearer*, 473 U.S. 52, 59, 105 S.Ct. 3039, 87 L.Ed.2d 38 (1985) (defining intramilitary immunity as applicable whenever the plaintiff's claims are "the *type* of claims that, if generally permitted, would involve the judiciary in sensitive military affairs at the expense of military discipline and effectiveness"). These same cases have also called into question the argument advanced in *Agent Orange* that an order wrongly denying a claim of intramilitary immunity does "not present a sufficiently grave threat of irreparable harm [such that it] would be effectively unreviewable on appeal from a final judgment." *Agent Orange*, 745 F.2d at 165. *See also Stanley*, 483 U.S. at 682–83, 107 S.Ct. 3054.

We conclude that the district court's order denying appellant's claim of intramilitary immunity is immediately appealable under the collateral order doctrine.

## B. Justiciability

In *Feres v. United States*, the Supreme Court held that members of the armed services could not sue the government for injuries that "arise out of or are in the course of activity incident to service." 340 U.S. 135, 146, 71 S.Ct. 153, 95 L.Ed. 152 (1950). In so doing, the Court "creat[ed] a judicial exception to the Federal Tort Claims Act's (FTCA's) broad waiver of sovereign immunity." *Lutz v. Sec'y of the Air Force*, 944 F.2d 1477, 1480 (9th Cir. 1991). In the half century since the *Feres* decision, the doctrine of intramilitary immunity has been expanded to bar a variety of claims by servicemen against superior officers. In *United States v. Shearer*, 473 U.S. 52, 105 S.Ct. 3039, 87 L.Ed.2d 38, for example, the Court extended the doctrine to bar the FTCA claim of a soldier who was injured, off-base and off-duty, by another soldier. The doctrine was held to bar two *Bivens* actions in *Chappell v. Wallace*, 462 U.S. 296, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983) and *United States v. Stanley*, 483 U.S. 669, 107 S.Ct. 3054, 97 L.Ed.2d 550, and several Courts of Appeals, including this court, have held that intramilitary immunity bars suits for damages under 42 U.S.C. § 1983. *See, e.g., Jones v. N.Y. State Div. of Military & Naval Affairs*, 166 F.3d 45, 51–52 (2d Cir. 1999), *Wright v. Park*, 5 F.3d 586, 591 (1st Cir.1993); *Crawford v. Tex. Army Nat'l Guard*, 794 F.2d 1034, 1036 (5th Cir.1986); *Jorden v. Nat'l Guard Bureau*, 799 F.2d 99, 104–08 (3d Cir.1986); *Brown v. United States*, 739 F.2d 362, 367 (8th Cir.1984); *Martelon v. Temple*, 747 F.2d 1348, 1350–51 (10th Cir.1984). National Guardsmen have been similarly barred, under the *Feres* doctrine, from suing superior officers for damages. *See, e.g., Jones*, 166 F.3d at 50–51.

■ The hesitation to entertain intramilitary lawsuits is most often justified with reference to the "peculiar and special relationship of the soldier to his superiors [and] the effects of the maintenance of such suits on discipline." *United States v. Brown*, 348 U.S. 110, 112, 75 S.Ct. 141, 99 L.Ed. 139 (1954). The Supreme Court has repeatedly counseled that "[c]ivilian courts must, at the very least, hesitate long before entertaining a suit which asks the court to tamper with the established relationship between enlisted military personnel and their superior officers; that relationship is at the heart of the necessarily unique structure of the Military Establishment." *Chappell*, 462 U.S. at 300, 103 S.Ct. 2362. Moreover, the Constitution's "explicit grant of plenary authority to Congress" to regulate the military counsels against court interference with military decisionmaking. *Id.* at 301, 103 S.Ct. 2362. As the Supreme Court wrote in *Orloff v. Willoughby*, 345 U.S. 83, 73 S.Ct. 534, 97 L.Ed. 842 (1953),

> [J]udges are not given the task of running the Army. The responsibility for setting up channels through which ... grievances can be considered and fairly settled rests upon the Congress and upon the President of the United States and his subordinates. The military constitutes a specialized community governed by a separate discipline from that of the civilian. Orderly government requires that the judiciary be as scrupulous not to interfere with legitimate Army matters as the Army must be scrupulous not to intervene in judicial matters.

*Id.* at 93–94, 73 S.Ct. 534.

The scope of the intramilitary immunity doctrine is not precisely defined. While it

is clear that military personnel may not sue superior officers for damages, it is also clear that the military's freedom from suits brought by servicemembers is not absolute. As the *Chappell* Court noted, "military personnel are [not] barred from all redress in civilian courts for constitutional wrongs suffered in the course of military service." 462 U.S. at 304, 103 S.Ct. 2362. Indeed, the *Chappell* opinion pointed to a number of cases in which the Supreme Court entertained constitutional and statutory challenges to military regulations. *See Brown v. Glines,* 444 U.S. 348, 100 S.Ct. 594, 62 L.Ed.2d 540 (1980) (challenge to Air Force rules requiring servicemembers to obtain approval from their commanders before circulating petitions on Air Force bases); *Parker v. Levy,* 417 U.S. 733, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974) (challenge to the articles of Uniform Code of Military Justice); *Frontiero v. Richardson,* 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973) (challenge to statutes establishing differential benefits for male and female spouses of military personnel).

The line between justiciable and nonjusticiable intramilitary suits has never been precisely defined by the Supreme Court. In *United States v. Stanley,* the Court noted that the cases cited in *Chappell* as examples of justiciable intramilitary suits were all ones in which the plaintiff was seeking "redress designed to halt or prevent ... constitutional violation[s] rather than the award of money damages." *Stanley,* 483 U.S. at 683, 107 S.Ct. 3054. Dibble urges this court to read *Stanley* as meaning that all intramilitary claims for equitable relief, as opposed to money damages (at least where constitutional violations are alleged), are justiciable. Defendant argues that although some equitable suits are allowed in appropriate circumstances, *any* suit in which a "civilian court [is asked] to second-guess military decisions"—particularly personnel decisions—

is barred, lest it "impair essential military discipline." *Shearer,* 473 U.S. at 57, 105 S.Ct. 3039.

The parties' arguments highlight a disagreement among our sister circuits regarding the justiciability of claims by members of the National Guard and the active military who seek equitable relief for alleged constitutional violations in personnel decisions. The Fifth, Seventh, Eighth, Ninth, and D.C. Circuits have characterized the governing rule as allowing equitable challenges to personnel decisions only when they constitute facial challenges to the constitutionality of military regulations, and not in cases of discrete individualized actions. *See Knutson v. Wisc. Air Nat'l Guard,* 995 F.2d 765 (7th Cir.1993); *Watson v. Ark. Nat'l Guard,* 886 F.2d 1004 (8th Cir.1989); *Kreis v. Sec'y of the Air Force,* 866 F.2d 1508 (D.C.Cir.1989); *Christoffersen v. Wash. State Air Nat'l Guard,* 855 F.2d 1437 (9th Cir.1988); *Crawford v. Tex. Army Nat'l Guard,* 794 F.2d 1034 (5th Cir.1986). The First, Third, and Tenth Circuits, in contrast, have entertained equitable actions protesting military personnel decisions that were not facial challenges to the constitutionality of a military regulation. *See Wigginton v. Centracchio,* 205 F.3d 504 (1st Cir.2000); *Jorden v. Nat'l Guard Bureau,* 799 F.2d 99 (3d Cir.1986); *Walden v. Bartlett,* 840 F.2d 771 (10th Cir.1988). These disparate outcomes reflect a split in the lower courts' understanding of *Stanley* and *Chappell.*

The First Circuit decision in *Wigginton* and the Third Circuit decision in *Jorden* directly embrace the position advanced by Dibble in this case: that the Supreme Court's observations in *Chappell* and *Stanley* regarding the justiciability of certain intramilitary claims "leave[ ] open claims for injunctive relief against the military."

*Jorden*, 799 F.2d at 109. As the Third Circuit wrote in *Jorden*,

> *Chappell* stated that it was not closing the door on claims against the military for constitutional violations, and cited as examples of viable actions three cases— *Brown, Frontiero*, and *Parker*—that involved ... facial constitutional challenges to regulations or statutes concerning the military. However, the Court in *Brown* expressly stated that judicial scrutiny was not limited to facial constitutional challenges; rather, legitimate constitutional claims could arise from the application of these statutes and regulations.

*Id.*

The *Jorden* decision justifies this position further by reference to the underlying rationale of *Feres* and *Chappell:*

> One of the concerns underlying *Chappell* is the need for military officers' uninhibited decisionmaking, and the threat to such decisionmaking if officers fear personal liability. The threat of personal liability for damages poses a unique deterrent to vigorous decisionmaking. *See generally,* P. Schuck, Suing Government (1983). On the other hand, the possibility that an officer may be compelled by a court to cease applying a particular regulation in an arbitrary manner, or to reinstate an improperly discharged soldier, poses much less of a threat to vigorous decisionmaking.

*Id.* at 110.

Other courts of appeals have read *Stanley* and *Chappell* differently. For example, the Fifth Circuit, in *Crawford,* proposed a distinction between constitutional challenges to military regulations (which the court held to be justiciable) and challenges to military personnel decisions (which the court held were nonjusticiable). Responding to the suggestion that all intramilitary suits for injunctive relief are justiciable under *Chappell* and *Stanley,* the court noted that

> [t]he common characteristic of [the Supreme Court decisions allowing constitutional claims against the military] is that they involve challenges to the facial validity of military regulations and were not tied to discrete personnel matters. The nature of the lawsuits, rather than the relief sought, rendered them justiciable. The injunctive-relief exception to *Chappell* advocated by appellants could swallow *Chappell*'s rule of deference.

*Crawford,* 794 F.2d at 1036. The Seventh and Eighth Circuits have adopted this logic as well, both holding that challenges by servicemembers to military personnel decisions are ordinarily nonjusticiable, unless they involve facial challenges to the constitutionality of statutes or military regulations. *See Knutson,* 995 F.2d at 771; *Watson,* 886 F.2d at 1008–10. As the Eighth Circuit explained,

> [T]he Court has entertained, on numerous occasions, suits involving facial constitutional challenges to military regulations or statutes....
>
> . . .
>
> There is a vast difference between judicial review of the constitutionality of a regulation or statute of general applicability and judicial review of a discrete military personnel decision. In the first instance, a legal analysis is required; one which courts are uniquely qualified to perform. The second involves a fact-specific inquiry into an area affecting military order and discipline and implicating all the concerns on which *Feres* and *Chappell* are premised.

*Watson,* 886 F.2d at 1010 (internal citations omitted).

We find this reasoning more persuasive. First, we do not believe that *Chappell* and *Stanley* unambiguously indicate that *all*

injunctive claims by servicemembers against their superiors are justiciable. Rather, we agree with the Fifth Circuit that "[t]he nature of the [intramilitary] lawsuits [found justiciable by the Supreme Court], rather than the relief sought, rendered them justiciable." *Crawford*, 794 F.2d at 1036. Second, given the ambiguity that *Stanley* and *Chappell* present, we do not agree with the Third Circuit's policy judgment that injunctive suits as a class necessarily involve a negligible risk of improper interference with military decision-making and discipline. While it may be true, in certain circumstances, that the prospect of an injunction would present less of a "threat to vigorous decisionmaking," *Jorden*, 799 F.2d at 110, than would the prospect of monetary damages, we do not believe that the threat is necessarily negligible. We have previously noted that "[t]he risk of improper judicial interference with military functioning is not abated 'merely because the remedy sought is an injunction rather than damages.' " *Jones*, 166 F.3d at 52 (quoting *Watson*, 886 F.2d at 1009). Moreover, even if officers faced with the prospect of judicial interference would nonetheless feel free to make command decisions, the availability of injunctive relief from a civilian court would undoubtedly affect military discipline. Suits by enlisted soldiers bypassing the hierarchy of the armed services seeking injunctions to overturn personnel decisions of their superiors in civilian courts could substantially alter and interfere with the "peculiar and special relationship of the soldier to his superiors." *Brown*, 348 U.S. at 112, 75 S.Ct. 141

Our holding does not mean that *all* military personnel decisions are nonjusticiable under the doctrine of intramilitary immunity. As we have noted previously, "[t]he rule of non-justiciability of discretionary military decisions is not absolute." *Jones*, 166 F.3d at 52. For example, "where the

military has failed to follow its own mandatory regulations in a manner substantially prejudicing a service member," we will entertain a suit seeking redress of the prejudice. *Id.* (citing *Blassingame v. Sec'y of the Navy*, 866 F.2d 556, 559–60 (2d Cir.1989); *Ornato v. Hoffman*, 546 F.2d 10, 13 (2d Cir.1976); *Crawford v. Cushman*, 531 F.2d 1114, 1120 (2d Cir.1976)). We decline to adopt a categorical rule on the justiciability of intramilitary suits.

Dibble does not allege that the Guard failed to follow its own procedures when it discharged him from service. Indeed, Dibble has availed himself of the full range of federal intramilitary remedies by pursuing his claim for reinstatement and correction of records not only in this forum, but with the Air Force Board for the Correction of Military Records. For the district court to find that the Guard violated Dibble's constitutional rights by discharging him, it would be forced to make a particularized inquiry into the mindset of his superior officers, determining whether their various disciplinary actions were motivated by proper military concerns or by the unconstitutional desire to stifle Dibble's protected First Amendment activity. Especially considering the availability of intramilitary review in cases such as this, we decline to insert the federal courts into military decisionmaking in such an intrusive manner.

## CONCLUSION

The order of the district court denying defendant's motion to dismiss is REVERSED, and the case is REMANDED with instructions to dismiss.